UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. |
| ) | |
| MERIDIAN MOBILE ) | |
| HEALTH L.L.C. d/b/a CAPITAL ) | |
| AMBULANCE, ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT

NOW COMES Plaintiff, the United States of America (the "United States"), on behalf of its agency the U.S. Department of Health and Human Services ("HHS"), and hereby files the instant Complaint against Meridian Mobile Health, L.L.C. d/b/a Capital Ambulance ("Defendant," or "Capital") pursuant to 31 U.S.C. § 3730(a), and in support hereof alleges as follows:

**I.   Summary of Action**

1. From October 2016 through February 2018, Capital claimed and received payments for medically unnecessary nonemergency ambulance transports of Medicare beneficiaries from Eastern Maine Medical Center ("EMMC") to locations in the greater Bangor area. Accordingly, Defendant acted in violation of the federal False Claims Act, 31 U.S.C. § 3729, *et seq.*

2. Ambulances are primarily emergency vehicles. Absent a medical emergency, the appropriate means to transport a patient is ordinarily by wheelchair van or car. This general rule applies to Medicare billing. A limited exception is available only where a patient is either "bed-confined" (by virtue of being unable to get up from bed without assistance, walk, and sit in a

chair or wheelchair) and use of a wheelchair van or car is contraindicated, or a patient's medical condition otherwise requires an ambulance.  Thus, for Medicare billing purposes, ambulance transports are not covered when some means of transportation other than an ambulance could be used without endangering a patient's health.  This is so regardless of whether another means of transportation is actually available.  In other words, nonemergency ambulance transports of patients who are neither bed-confined nor otherwise medically require an ambulance may not be billed to Medicare.

3.      The United States alleges that Capital deliberately ignored and/or recklessly disregarded these rules by engaging in a practice of seeking Medicare payments for patients it claimed were either "bed-confined" or for whom transportation by ambulance was not otherwise medically necessary.

4.      Certain Medicare patients Capital transported to and from EMMC via ambulance are at issue.  Medically unnecessary ambulance rides billed by Capital were frequently supported by an EMMC "Certification of Medical Necessity" form averring that the unnecessary ambulance transports were medically necessary.  The Certification of Medical Necessity forms prepared by EMMC were used by Capital to seek and receive Medicare funds for each nonemergency ambulance transport.  However, these certifications were often contradicted by the contemporaneous narratives of Capital personnel as well as EMMC's medical records.

5.      The instant action accordingly seeks False Claims Act damages and civil penalties against Capital.

## II. Jurisdiction and Venue

6. This Court has jurisdiction over the claims brought by the United States under the False Claims Act pursuant to 28 U.S.C. §§ 1331, 1345, and supplemental jurisdiction to entertain common law and equitable causes of action under 28 U.S.C. § 1367(a) and 31 U.S.C. § 3732(b).

7. This Court has personal jurisdiction over Defendant pursuant to 31 U.S.C. § 3732(a) both because Defendant can be found in, resides in, or transacts business in this District and because Defendant's acts proscribed under 31 U.S.C. § 3729 occurred in this District.

8. Venue is proper in this District under 31 U.S.C. § 3732(a) and 28 U.S.C. §§ 1391(b), 1391(c), because Defendant resides in or transacts business in this District and/or because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## III. Parties

9. Plaintiff the United States is acting on behalf of its agency HHS.

10. Defendant Capital, located at 931 Union Street, in Bangor, Maine, provided ambulance transport services in the greater Bangor, Maine, area to and from EMMC during the relevant October 2016 through February 2018 timeframe. Capital is a Maine limited liability company.

## IV. Applicable Laws & Regulations

### A. The Medicare Program

11. Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395 *et seq.*, establishes the Health Insurance for the Aged and Disabled Program, commonly referred to as the Medicare Program (the "Medicare Program" or "Medicare").

3

12.     Parts A through D comprise the Medicare Program.  At issue in this case is Medicare Part B, which provides federal government funds to help pay for, among other things, ambulance services provided to Medicare beneficiaries.  *See* 42 U.S.C. § 1395m(l); *see generally* 42 U.S.C. §§ 1395j-1395w-4.

13.     Medicare Part B is funded by insurance premiums paid by enrolled Medicare beneficiaries and by contributions from the Treasury.  Eligible individuals may enroll in Part B to obtain benefits in return for payments of monthly premiums as established by HHS.  *See* 42 U.S.C. §§ 1395o, 1395r.  Medicare payments are often made directly to service providers, such as ambulance providers, rather than to the patient (also known as the "beneficiary").  This occurs when the provider accepts assignment of the right to payment from the beneficiary.  In such instances the provider submits its bill directly to Medicare for payment, which is what Capital did in this case.

14.     Medicare is administered by the Centers for Medicare & Medicaid Services ("CMS"), a sub-agency of HHS.  CMS, in turn, contracts with Medicare Administrative Contractors ("MACs"), which act on CMS' behalf to administer, process, and pay Part B claims from the Medicare Trust Fund.

15.     For example, Capital submitted claims to the MAC covering Maine.  For the ambulance transport-related claims at issue in this case, the Medicare Program, through the MAC, paid a significant portion of every claim accepted.

16.     In order to bill the Medicare Program with respect to the claims at issue in this case, Capital submitted electronic CMS-1500 health insurance claims forms. With its submission of each such CMS-1500 form, Capital certified that the ambulance transport services in question were "medically indicated and necessary for the health of the patient," and stated the

procedure(s) for which it was billing Medicare, the identity of the patient, and its provider number.

17. Because it is not feasible to review medical documentation before paying each claim, MACs generally make payment under Medicare Part B on the basis of the providers' certification included on the Medicare claim form.

18. All healthcare providers, including ambulance services providers, must comply with applicable federal statutes, regulations and guidelines in order to be paid by Medicare Part B. A provider has a duty to have knowledge of the statutes, regulations, and guidelines regarding coverage for the Medicare services.

19. Medicare only pays for services which are "reasonable and necessary for the diagnosis or treatment of illness or injury . . . ." 42 U.S.C. § 1395y(a)(1)(A).

20. Medicare regulations exclude from payment services that are not reasonable and necessary. *See* 42 C.F.R. § 411.15(k)(1).

**B.   Medicare Laws Regarding Nonemergency Ambulance Transports**

21. Medicare specifically provides for coverage of ambulance services only "where the use of other methods of transportation is contraindicated by the individual's condition, but . . . only to the extent provided in regulations." 42 U.S.C. § 1395x(s)(7).

22. The Medicare regulation for "Coverage of ambulance services" is 42 C.F.R. § 410.40. This regulation was in force throughout the entirety of Capital's conduct at issue in this case. The regulation defines the "medical necessity requirements" for Medicare-covered ambulance transportation as follows:

> (1) General rule. Medicare covers ambulance services, including fixed wing and rotary wing ambulance services, only if they are furnished to a beneficiary whose medical condition is such that other means of transportation are contraindicated. The beneficiary's condition must require both the ambulance transportation itself and the level of service

5

>provided in order for the billed service to be considered medically necessary. Nonemergency transportation by ambulance is appropriate if either: the beneficiary is bed-confined, and it is documented that the beneficiary's condition is such that other methods of transportation are contraindicated; or, if his or her medical condition, regardless of bed confinement, is such that transportation by ambulance is medically required. Thus, bed confinement is not the sole criterion in determining the medical necessity of ambulance transportation. It is one factor that is considered in medical necessity determinations. ***For a beneficiary to be considered bed-confined, the following criteria must be met:***
>
>>*(i)  The beneficiary is unable to get up from bed without assistance.*
>>*(ii) The beneficiary is unable to ambulate.*
>>*(iii) The beneficiary is unable to sit in a chair or wheelchair.*

42 C.F.R. § 410.40(d)(1) (emphasis added).

      23.      Subpart (d)(3) of Section 410.40 further provides that Medicare only "covers medically necessary nonemergency ambulance services that are either unscheduled or that are scheduled on a nonrepetitive basis"—like those at issue here—in circumstances including, among others:

>If the ambulance provider or supplier is unable to obtain a signed physician certification statement from the beneficiary's attending physician, a signed certification statement must be obtained from either the physician assistant (PA), nurse practitioner (NP), clinical nurse specialist (CNS), registered nurse (RN), or discharge planner, who has personal knowledge of the beneficiary's condition at the time the ambulance transport is ordered or the service is furnished. This individual must be employed by the beneficiary's attending physician or by the hospital or facility where the beneficiary is being treated and from which the beneficiary is transported.

*See* 42 C.F.R. § 410.40(d)(3)(iii).

      24.      This certification requirement, as the title of the regulation indicates, constitutes a "Special rule for nonemergency ambulance services that are either unscheduled or that are scheduled on a nonrepetitive basis." *Id.*

6

25.     The certifications submitted by Capital to the MAC and/or CMS relevant to this matter were filled out and completed by EMMC personnel.  Such certification information was a material consideration of the MAC and/or CMS when determining whether to pay a claim, as such information had a natural tendency to influence, or be capable of influencing, the payment of federal Medicare monies.

26.     Capital's receipt of Medicare payments for the ambulance transport services at issue in this action was conditioned on information contained in EMMC's certifications attesting that Medicare's medical necessity requirements were met.  42 C.F.R. § 410.40(d)(3)(v).

27.     For such reasons, "[i]n all cases, the provider or supplier must keep appropriate documentation on file and, upon request, present it to the contractor."  42 C.F.R. § 410.40(d)(3)(v).  However, "[t]he presence of the signed certification statement or signed return receipt does not alone demonstrate that the ambulance transport was medically necessary.  All other program criteria must be met in order for payment to be made."  *Id.*

### C.     The False Claims Act

28.     The False Claims Act, at 31 U.S.C. § 3729(a)(1)(A), provides that a person is liable to the United States Government for three times the amount of damages which the Government sustains because of the act of that person, plus a civil penalty of between $10,781.40 and up to $21,562.80 for each such claim, for each instance in which the person "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval."

29.     The False Claims Act defines the term "knowingly" under 31 U.S.C. § 3729(b)(1)(A) to mean that a person, with respect to information, "(i) has actual knowledge of

the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information."

30. Pursuant to 31 U.S.C. § 3729(b)(1)(B), no proof of specific intent to defraud is required.

## V. Factual Background

31. Defendant's compliance department independently initiated a retrospective quality assurance review of the medical necessity of a sample of nonemergency ambulance transports billed to Medicare covering the time period of October 2016 through February 2018.

32. Following such review, Capital identified instances in the October 2016 through February 2018 timeframe where it billed and received payment from Medicare for nonemergency ambulance transports originating at EMMC that did not satisfy the medical necessity requirements of 42 U.S.C. § 1395x(s)(7) and 42 C.F.R. § 410.40.

33. Defendant voluntarily disclosed the results of its internal review and investigation to the United States Attorney's Office for the District of Maine.

34. On the basis of such information, as well as the Government's own independent investigation, the United States alleges that Capital submitted or caused to be submitted certain claims to Medicare for medically unnecessary ambulance transportation services with deliberate ignorance and/or reckless disregard of the fact that such transports were not medically necessary.

35. Certain patients were documented in Capital and EMMC records as being able to get up from their beds without assistance, walk, and/or sit in a chair or wheelchair, and were not otherwise medically required to receive ambulance transports.

36. Such patients were therefore not "bed-confined," and did not otherwise require ambulance transportation or qualify for ambulance transportation under applicable Medicare

rules. In certain instances, however, Capital sought and received Medicare payments for nonemergency ambulance transport services for these patients based on the representation that the billed ambulance transports were medically necessary, oftentimes citing patients as being "deconditioned" or "confused" as a basis for the ambulance transport.

37. For example, on September 23, 2017, Capital transported by ambulance a 63 year-old patient from EMMC to Ross Manor in Bangor, a trip of approximately 2.7 miles. The patient was in stable condition, had no complaints, and was going to Ross Manor for rehabilitation. According to Capital's Patient Care Report, upon arrival, Capital staff observed the patient sitting in a chair watching a Red Sox game. The patient was also able to stand, walk, and pivot with assistance. EMMC's Certification of Medical Necessity form, however, stated that the patient could not be seated during transport because the patient was "[u]nable to tolerate [the] seated position for [the] time needed for transport" and was "deconditioned." Capital thereafter submitted a claim for payment to Medicare and received Medicare funds as a result. In doing so, Capital certified on its CMS-1500 form that the ambulance transport services in question had been "medically indicated and necessary for the health of the patient."

38. As another example, on November 16, 2017, Capital transported by ambulance a 52 year-old patient from EMMC to Stillwater Health Care Center in Bangor, a trip of approximately 1.3 miles. The patient was in stable condition, complained of moderate ankle pain, and was going to Stillwater Health Care Center for rehabilitation. According to Capital's Patient Care Report, upon arrival, Capital staff observed the patient sitting on his bed. The patient stood and walked to the stretcher before being transported via Capital ambulance. Upon arriving at Stillwater Health Care Center, the patient again "stood, walked to, and sat on the bed at [the] destination without assistance." EMMC's Certification of Medical Necessity form,

9

however, stated that the patient could not be seated during transport because the patient experienced "[m]oderate/severe pain on movement" and noted "deconditioning." Capital thereafter submitted a claim for payment to Medicare and received Medicare funds as a result. In doing so, Capital certified on its CMS-1500 form that the ambulance transport services in question had been "medically indicated and necessary for the health of the patient."

39. Capital therefore deliberately ignored and/or recklessly disregarded that certain claims submitted to Medicare did not accurately represent the physical condition of patients provided nonemergency ambulance transports.

### Count I:  False or Fraudulent Claims
(31 U.S.C. §§ 3729(a)(1)(A), 3730(a))

40. Paragraphs 1 through 39 are realleged as though fully set forth herein.

41. Defendant with deliberate ignorance and/or reckless disregard submitted or caused to be submitted false or fraudulent claims for payment or approval in violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(A), and thereafter received payments on such false or fraudulent claims.

42. Because of Defendant's acts, the United States sustained damages in an amount to be determined at trial, and therefore is entitled to treble damages under the False Claims Act, plus civil penalties.

### Count II: Unjust Enrichment
(Common Law)

43. Paragraphs 1 through 42 are realleged as though fully set forth herein.

44. Defendant was unjustly enriched through the payments received from Medicare funds.  The circumstances of Capital's receipt of those payments are such that, in equity, it is liable to account for and pay such amounts, which are to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff the United States requests that judgment be entered in its favor and against Defendant as follows:

A. On Count One (Violations of the False Claims Act, 31 U.S.C. § 3729(a)(1)(A)), for treble the United States' damages, in an amount to be determined at trial, plus civil penalties for each false claim presented;

B. On Counts One and Two, an award of costs pursuant to 31 U.S.C. § 3729(a);

C. On Count Two (Unjust Enrichment), for an accounting and for the amounts by which Defendant was unjustly enriched, in an amount to be determined at trial, together with costs and interest; and

D. All other relief this Court deems just and proper.

Dated: September 27, 2019　　　　　　　　　　　Respectfully submitted,
Portland, Maine

　　　　　　　　　　　　　　　　　　　　　　　HALSEY B. FRANK
　　　　　　　　　　　　　　　　　　　　　　　United States Attorney


　　　　　　　　　　　　　　　　　　　　　　　/s/ John G. Osborn
　　　　　　　　　　　　　　　　　　　　　　　John G. Osborn
　　　　　　　　　　　　　　　　　　　　　　　Chief, Civil Division
　　　　　　　　　　　　　　　　　　　　　　　100 Middle Street, E. Tower, 6th Floor
　　　　　　　　　　　　　　　　　　　　　　　Portland, ME 04101
　　　　　　　　　　　　　　　　　　　　　　　(207) 780-3257
　　　　　　　　　　　　　　　　　　　　　　　John.Osborn1@usdoj.gov


　　　　　　　　　　　　　　　　　　　　　　　/s/ Andrew K. Lizotte
　　　　　　　　　　　　　　　　　　　　　　　Andrew K. Lizotte
　　　　　　　　　　　　　　　　　　　　　　　Assistant U.S. Attorney
　　　　　　　　　　　　　　　　　　　　　　　100 Middle Street, E. Tower, 6th Floor
　　　　　　　　　　　　　　　　　　　　　　　Portland, ME 04101
　　　　　　　　　　　　　　　　　　　　　　　(207) 780-3257
　　　　　　　　　　　　　　　　　　　　　　　Andrew.Lizotte@usdoj.gov